UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brittany Salvate,

        Plaintiff,

   v.                                                                      **MEMORANDUM OPINION AND ORDER**
                                                                                Civil No. 13-2898 ADM/FLN

Automotive Restyling Concepts, Inc. d/b/a
Automotive Concepts of Minnesota a/k/a
AC Funding, and Becky Spinler,

        Defendants.

___

Todd M. Murray, Esq., Friedman Iverson, PLCC, Minneapolis, MN, on behalf of Plaintiff.

William H. Henney, Esq., Henney Law, Minnetonka, MN, on behalf of Defendants.

___

## I. INTRODUCTION

On November 14, 2014, the undersigned United States District Judge heard oral argument on Defendants Automotive Restyling Concepts, Inc. d/b/a Automotive Concepts of Minnesota a/k/a AC Funding and Becky Spinler's (the "Defendants") Motion for Summary Judgment [Docket No. 14]. For the reasons set forth below, Defendants' motion is granted.

## II. BACKGROUND

In October of 2012, Brittany Salvate ("Salvate" or the "Plaintiff") decided to purchase a used Ford truck from Kelcor Auto in Lewiston, Minnesota. Spinler Aff. [Docket No. 17] ¶ 5. Her low credit score prevented Salvate from obtaining financing from Kelcor Auto. Automotive Restyling Concepts, Inc. ("ARC") is a financial services company that does find financing for customers with low credit scores. Id. ¶ 6. On October 23, 2012, Salvate worked with Becky Spinler ("Spinler"), an independent contractor salesperson with ARC, to purchase the truck and

finance the purchase through United Auto Credit Corp.  Id. ¶¶ 2, 4.

Salvate purchased the truck for $9,992.  Id. Ex. 2.  In addition, Salvate purchased GAP protection for $595 and a Service Contract from Associates Underwriting Limited for $1,513 (the "Service Contract").[1]  Id.  Salvate paid $2,000 down and financed the balance over 42 months.  Id.  The Retail Installment Contract and Security Agreement (the "Retail Contract") includes the required Truth in Lending Disclosures and states the amount financed was $10,938.98 and the finance charge was $5,148.28.  Id.

Salvate claims she did not want to buy the Service Contract.  Murray Aff. [Docket No. 21] Ex. C 21:8-15.  Salvate alleges that Spinler told her that purchasing the Service Contract was required in order to obtain financing for the truck.  Id. 22:24–23:7.  Spinler denies making any statement to that effect.  Spinler Aff. ¶ 13.  Regardless of what was said by Spinler, the documents Salvate signed identify the Service Contract as a discretionary purchase that is not required to receive financing.  Id. Exs. 3, 4, 5.  Salvate claims Spinler rushed her through the process and, as a result, she did not have the opportunity to read any of the documents before signing them.  Murray Aff. Ex. C 94:42–95:11.

Salvate asserts Defendants violated the Truth in Lending Act ("TILA") and committed fraud.  Specifically, Salvate alleges the Service Contract charge should have been included in the finance charge, rather than in the amount financed disclosure, because it was payable incident to the extension of credit.

---

[1] GAP coverage pays the difference to the bank over market value that the insurance company does not cover if the car is stolen or totaled.  GAP coverage is not an issue here.

## III.  DISCUSSION

**A.  Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The United States Supreme Court, in construing Federal Rule 56(c), stated in Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate.  Id.  However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . .  Instead, 'the dispute must be outcome determinative under prevailing law.'"  Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).  Moreover, a plaintiff facing a summary judgment motion cannot "get to a jury without any significant probative evidence tending to support the complaint."  Rath v. Selection Research, Inc., 978 F.2d 1087, 1091 (8th Cir. 1992), quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 249, 106 S.Ct. 2505, 2510 (1986).  In addition, "summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

## B. Truth in Lending Act

Salvate claims Defendants violated TILA by incorrectly including the $1,513 Service Contract charge in the amount financed, rather than the finance charge.  Defendants argue that the Service Contract charge was properly included in the amount financed because it was not payable incident to the extension of credit.  The purpose of TILA is "to require creditors to disclose the 'true' cost of consumer credit, so that consumers can make informed choices among available methods of payment." Joseph v. Norman's Health Club, Inc., 532 F.2d 86, 90 (8th Cir. 1976).  TILA defines a finance charge as:  1) the sum of all charges; 2) payable directly or indirectly by the consumer; 3) imposed directly or indirectly by the creditor; 4) as an incident to the extension of credit.  15 U.S.C. § 1605(a).  A payment is incident to the extension of credit if credit would not be extended unless the payment was made.  First Acadiana Bank v. Federal Deposit Ins. Corp., 833 F.2d 548, 550 (5th Cir. 1987).

The crux of this dispute is whether ARC required the Service Contract as a condition of financing.  The parties' testimony on this question is directly opposed.  Salvate alleges Spinler told her ARC required the Service Contract before credit would be extended; Spinler alleges she never made any such statement.  Compare Murray Aff. Ex. C 22:24–23:7 ("She told me that United Auto was requiring the service contract on the approval conditions of the loan. . . .Well, if you can't purchase – if you do not purchase a service contract, United Auto will not finance your loan.") with Spinler Aff. ¶ 13 ("I did not tell Salvate or Don Dickey that Salvate was required to

buy a service contract.").

However, even if Spinler did say the Service Contract was a condition of financing, the documents signed by Salvate clearly state otherwise. The Service Contract states: "Purchase of this Vehicle Service Contract is not required in order to purchase or finance a motor vehicle." Spinler Aff. Ex. 3. The Product Price and Payment Disclosure for Installment Sales (the "Payment Disclosure") document states: "Finance terms and approval are not conditioned on the purchase of any of the above products and services." Id. Ex. 4. The $1,513 Service Contract is included under "Products and Services." Id. These documents establish that the Service Contract charge was properly included in the amount financed of the TILA Disclosures because it was not payable incident to the extension of credit.

At the hearing, Salvate argued that the contract between Salvate and ARC, the Retail Contract, must control the outcome of this dispute. Salvate argued that the signed contracts indicating the Service Contract is not a required purchase are outside the four corners of the Retail Contract and must be ignored. Salvate argues that because the four corners of the Retail Contract are silent as to whether the Service Contract is required as a condition of financing, Spinler's alleged misrepresentation creates a genuine issue of material fact that precludes summary judgment in Defendants' favor.

Salvate's position fails to account for the Retail Contract's reference to the Service Contract and misapplies a principle of contract law. "A contract and other writings relating to the same transaction must be construed with reference to each other." Dayton Park Props, L.L.P. v. Pacific Life Ins. Co., 370 F.Supp. 2d 869, 871 (D. Minn. 2005); see also Restatement (Second) of Contracts § 202(2) (2005) ("[A]ll writings that are part of the same transaction are interpreted

together").

The Retail Contract includes a section entitled "Motor Vehicle Service Contract" located on the second page. Spinler Aff. Ex. 2. The box next to "Motor Vehicle Service Contract" is marked with an "X" and states: "With your purchase of the Vehicle, you agree to purchase a Motor Vehicle Service Contract to cover." Id. Ex. 2. Next to that sentence, "Refer to Service Contract" is written. Id. Thus, the Retail Contract incorporates the Service Contract by reference. Moreover, the Retail Contract and the other contracts signed by Salvate all relate to the same transaction, the purchase of the Ford truck, and therefore must be construed together. Accordingly, the Retail Contract must be construed with reference to the Service Contract.

The Service Contract and the Payment Disclosure document signed by Salvate expressly state the Service Contract was not required by ARC as a condition of financing.[2] Id. Exs. 2, 4. Thus, no genuine factual dispute is present. The Service Contract was not incident to the extension of credit and therefore not a finance charge under TILA. This is additionally confirmed by the Truth in Lending Disclosures in the Retail Contract, which included the Service Contract charge in the amount financed and not the finance charge. Id. Ex. 4. This was done because ARC did not require Salvate to purchase a Service Contracts before it extended her financing. Even assuming Spinler had stated otherwise, this does not raise a genuine factual dispute because the unambiguous contracts are controlling.

---

[2] Salvate argues the language of the Service Contract does not conclusively show that ARC does not require purchasing the Service Contract as a condition of financing. Even if Salvate's argument is accepted and the language of the Service Contract is discounted, the Payment Disclosure document clearly shows ARC also does not require the purchase of the Service Contract as a condition of financing. Spinler Aff. Ex. 4. Additionally, the Automotive Concepts Menu, which lists the charges and credits applied to the purchase price, reiterates "Finance products are optional, and not required to secure financing." Id. Ex. 5.

**C. Fraud**

Salvate also asserts a state law claim of fraud centered on Spinler's alleged statement regarding the Service Contract. Defendants argue that Salvate failed to plead her fraud claim with specificity and the contracts signed by Salvate state the Service Contract was not required to receive financing.

Under Minnesota law, the elements of fraud are:

> (1) a false representation [] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [Salvate] to act in reliance thereon; (4) that the representation caused [Salvate] to act in reliance thereon; and (5) that [Salvate] suffered pecuniary damages as a result of the reliance.

Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 368 (Minn. 2009). Plaintiffs must show reasonable reliance to prevail on fraud claims. Davidson v. Wilson, 763 F. Supp. 1470, 1472 (D. Minn. 1991). Reliance becomes an issue when there is an inconsistency between oral promises and written terms of an agreement. Johnson Bldg. Co. v. River Bluff Dev. Co., 374 N.W.2d 187, 194 (Minn. Ct. App.)  A contract provision negates a claim of fraud when the provision explicitly states a fact diametrically opposed to the claimed misrepresentation. Clements Auto Co. v. Service Bureau Corp., 444 F.2d 169 (8th Cir. 1971). "When a promise is not in plain contradiction of a contract or, if contradictory, when it is accompanied by misrepresentations of other material facts in addition to the contradictory intent, the question of reasonable reliance is for the trier of fact." Johnson Bldg., 374 N.W.2d at 194 (citing General Corp. v. General Motors Corp., 184 F. Supp. 231, 239 (D. Minn. 1960)).

Here, the purchasing documents clearly indicate that Salvate did not need to purchase the

7

Service Contract to receive financing.[3] This fact appears in multiple places in many of the seven documents signed by Salvate. See Spinler Aff. Exs. 3, 4, 5. Because Spinler's alleged misrepresentation is directly and repeatedly contradicted by provisions in the contract, Salvate's reliance on the alleged misrepresentation is unjustifiable as a matter of law.[4]

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants Automotive Restyling Concepts, Inc. d/b/a Automotive Concepts of Minnesota a/k/a AC Funding and Becky Spinler's Motion for Summary Judgment [Docket No. 14] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: December 5, 2014.

---

[3] While not directly impacting the merits of Salvate's claim, it is worth noting that some months after purchasing the truck, the Service Contract covered nearly $1,000 of mechanical repairs to the truck. Spinler Aff. § 15.

[4] Salvate's allegation that she did not read the contracts prior to signing because Spinler rushed her through the process is dubious. Any effect this fact has on the reasonableness of her reliance is undermined by the cancellation provision of the Service Contract, which gave Salvate 60 days to cancel the Service Contract for a full refund. See Spinler Aff. Ex. 3 ("This Vehicle Service Contract is cancelable by the SERVICE CONTRACT HOLDER or the leinholder cancels this Vehicle Service Contract within the first sixty (60) days and no claims have been filed, the SELLING DEALER will refund the entire Vehicle Service Contract Price.")